## JOHNSTONS *against* THE STATE.

### ERROR *to Hempstead Circuit Court.*

Judgment cannot be taken, upon the forfeiture of a recognizance, without the intervention of any process or proceeding against the recognizors.

Although we have no statute specially defining the mode of proceeding, yet doubtless the obligation of such a recognizance can be enforced.

But the State, like every other suitor, is bound to adopt some form or remedy allowed or prescribed by law; and the recognizors must have actual or constructive notice, or there can be no valid judgment.

And whether the recognizance has the force of a judgment, is not important, as to this question, because, if it has, an additional judgment is unnecessary and improper.

Philip P. Johnston, one of the plaintiffs in error, was indicted in Clark Circuit Court, for shooting. The venue was changed, at October Term, 1840, on application of defendant, to Hempstead county; and, as appears by the record of the latter Court, at April Term, 1841, the defendant and Albert G. Johnston, his security in recognizance, were called, and failed to appear; upon which, on motion of the Prosecuting Attorney, the recognizance was forfeited.

The record then states, that it appearing to the Court that Philip P. Johnston, and Albert G. Johnston, as his security, at October Term, 1840, of Clark Circuit Court, entered into recognizance to the State, in the sum of $500 *each*, to be levied, &c., upon condition that Philip P. Johnston would appear at Hempstead Circuit Court, at April Term, 1841, at the Court-house in Washington, on the first Monday of April, and answer the State, &c., and not depart, &c.; and that Philip P. Johnston has failed to appear; wherefore, the recognizance is forfeited. It was therefore considered, that the State recover of Philip P. Johnston the sum of $500, and of Albert G. Johnston $500, and of both all the cost in and about the cause expended. From this judgment they appealed.

PIKE, for plaintiffs in error:

The judgment is somewhat novel in form, and certainly illegal in awarding all the costs of the cause against the plaintiffs in error. But

this point is not the only one to be decided in the case.   The Court has hitherto very properly waived any decision as to the proper mode to be pursued by the State, in proceeding upon forfeited recognizances; and the question is therefore entirely an open one.  ʾ The method of proceeding against bail in civil suits, is definitely fixed, both by common law and our own statutes; but as to bail in criminal cases, no provision has been made by the Legislature.

As we do not consider the recognizance, or bond, entered into by the parties as being a part of the record, we can make no objection to it.   If it were legally before the Court, we should submit whether it is in fact a recognizance, legally entered of record.   The mere entry of it upon the record, apart from the bond itself, is clearly invalid in many particulars; and it is for this reason that the decision of the Court on the question legitimately presented by the record, becomes important.

The principal question is, whether the State was entitled, upon the failure to appear of a person bound in recognizance, to take judgment final against him and his securities, at the same term, without notice?

This Court has so often declared that no valid judgment can be pronounced against any person, in any Court of this State, unless he is first properly notified of the proceeding, that there is but one method of escape from the effect of those decisions in the present case, and that is, to hold the recognizance to have of itself the effect of a judgment of record; and this seems to have been the ground on which the Court below proceeded.

We do not think it particularly important to explore the ancient law-books for the obsolete learning on the subject of statutes staple and statutes merchant, by which the attorney for the State was governed in the Court below.   We do not think the principles of law on those recognizances peculiarly applicable to a recognizance of bail.

A *recognizance* in a civil case is an obligation of record.   So it is in a criminal case.  1 *Ch. Cr. Law,* 90.   But in a civil case in England, an action of debt or scire facias lay on it.   *Petersdorff on Bail,* 362.   But the method of proceeding in England on a recognizance in a criminal case, was different.   If, by the non-appearance of the prosecutor or witness at the trial, (and so of the prisoner), the recog-

nizance became forfeited, it was considered absolute, and being estreated, (that is, taken out from among the other records,) and sent up to the Exchequer, the party became an absolute debtor to the Crown, for the sum or penalty mentioned in the recognizance. 1 *Ch. Cr. Law*, 92; *Petersdorff on Bail*, 536; *Bac. Ab.*, *Bail in Cr. Cases*, *L.* They were there enforced by execution. But undeniably an action of debt or a scire facias could in England be maintained on a recognizance, by the sovereign; for at common law, the King could maintain any action adapted to his case, which a subject, under like circumstances, might maintain. 3 ———, 136; *Com. vs. Green*, 12 *Mass.*, 1. And in *Rastall's Entries*, title *Debt*, are several precedents of debt on recognizance, and one of them is by the King, on a recognizance to appear before a certain Court, and in the mean time to keep the peace. *Rast. Ent.*, 192.

A recognizance is admitted to have many of the attributes of a judgment. It is an acknowledgment of a debt of record; it binds the lands of the cognizor; and execution could issue on it from the Exchequer, as on a judgment.

In New-York, where, prior to 1818, such recognizances, when forfeited, were sent into the Court of Exchequer, and enforced by execution, the laws of 1818 gave the Court of Common Pleas the same powers relative to the collection and remission of fines and forfeited recognizances, as were by law vested in the Exchequer; and the Supreme Court of New-York held that, consequently, execution might issue out of the Court of Common Pleas, upon the forfeiture, as upon a judgment, but that an action would also lie upon the recognizance. *The People vs. Van Eps*, 4 *Wend.*, 387.

But in this State, we have never had any Court of Exchequer, nor can recognizances in the Circuit Court be estreated. No statute gives to our Circuit Courts the powers exercised in England by the Court of Exchequer; nor, if we had a Court of Exchequer, would it necessarily possess all the powers and authority of the English Court of Exchequer. For example, the Court of Exchequer in England could remit the penalty of a forfeited recognizance; yet it cannot be pretended that our Circuit Court has any such power.

Because the Court of K. B. could make a rule for estreating a

recognizance, and thereupon execution would issue upon it out of the Court of Exchequer, does it result that our Circuit Court, which possesses such jurisdiction as the Constitution confers, and no more, has united in itself the functions of both Courts, and can itself issue executions?

And again, if the Circuit Court has this double nature, still, by the practice of the Exchequer, no judgment could be entered, but execution merely issue on the recognizance. By what precedent of English practice could that Court proceed to render a formal judgment, on a recognizance which was already in law a judgment?

But we incline to believe that our own statutes are sufficiently explicit upon this subject, and do not authorize the judgment entered in this case.

The statute of the Louisiana Territory, formerly in force here, passed Nov. 4, 1808, provided, that when any person should forfeit a recognizance of peace, good behaviour, or appearance, for any cause whatever, the recognizance should be sued for, and judgment in the Court of Common Pleas for the district, or in the General Court, if the recognizance had been certified to that Court. *Ter. Dig.*, 192.

This statute has, it is true, been repealed; yet it is a clear rule as to statutes, that one which is repealed may be referred to in a collateral manner, to ascertain the construction of a later statute. But there is another ground upon which this statute of 1808 settles the question.

It is laid down to be, as a maxim, generally true, that if an affirmative statute, which is introductive of a new law, direct a thing to be done *in a certain manner*, that thing shall not, although there are no negative words, be done in any other manner. *Devarris on Stat.*, 641; *Hob.*, 298; *Str.*, 1125; *Rex vs. Stubbs*, 2 *T. R.*, 395.

Every affirmative statute is a repeal, by implication, of a precedent affirmative statute, so far as it is contrary thereto; for, *leges posteriores priores contrarias abrogant.* 11 *Co.*, 63, *a.*

Lord KENYON said that where affirmative words are peremptory, as that " the forms of proceeding set forth in the schedule annexed shall be used," he could not say that those words were merely *directory,*

and he held a material variance. from the form prescribed, fatal.   In the Territorial statutes, it is provided that all recognizances *shall be sued on.   Davison vs. Gill,* 1 *East.,* 64.

Penal statutes are always to be construed strictly, and cannot be extended by construction, (*Devarris,* 736, 737); and if a penalty given by a statute is to be recovered in a Court of record, it can only be recovered in one of the Superior Courts at Westminster; for being a penal statute, it is to be construed strictly, and these are the Courts in which the King's Attorney General is supposed to attend. *Walwyn vs. Smith,* 1 *Salk.,* 178; *Devarris,* 766; *Gregory's case,* 6 *Co.,* 19.   So where a statute gives power to justices of the peace " to hear and determine an offence in a summary way, it is necessarily implied and supposed, as a part of natural justice, that the party be first cited by summons, and have opportunity to be heard and answer for himself." 1 *Hawk. C.* 64, 5, 60.

We therefore believe, that even if the common law had been in force in this country prior to the act of 1808, the consequence of the passage of that act would have been, that so much of the common law as authorized execution to issue on recognizances, would have been abrogated by that statute, and, by necessary implication, repealed.

But the common law formed no part of the jurisprudence of the Territory until 1816; and then no part of it was adopted which was contrary to the then existing laws of the Territory.   And the Spanish law, before that time in force, allowed no execution to issue against bail in criminal matters, except after suit and judgment.

Although the Territorial statute just quoted has been repealed, still there has been no law revived by that repeal, which would authorize this judgment.   While this Territorial statute was in force, (for it was not repealed until the Revised Code went into operation, in 1839), the law of Criminal Proceedings in the Revised Code was passed, and was in force from the first day of March, 1838.

By the ninth section of that chapter, (*Rev. Stat.,* 289), where a recognizance to keep the peace is broken, the Court is directed to forfeit the recognizance, and *order it to be prosecuted,* unless reasonable excuse for the default be shown.   By the 13th section, it is made the

Johnstons *against* The State.

duty of the Attorney for the State " to put such recognizances in suit," and the 15th section directs in what manner the breach must be assigned.

So by section 31 of Chap. 32, a recognizance taken by a coroner, it is said, shall be conclusive evidence to support a *scire facias* or an action of debt. There are no other provisions, so far as we are aware, pointing out any method of proceeding on forfeited recognizances.

We think that we are entitled to conclude, that under the Territorial Government, that part of the common law or statutes of England which authorized execution forthwith to issue on a recognizance, when estreated and taken into the Exchequer, never was in force; that the Spanish law authorized no proceeding of the kind, nor gave any such efficacy to a recognizance; that the statute of 1808 in terms precluded such a consequence; that, consequently, the adoption of certain parts of the common law in 1816, warranted no such proceeding, because so much of the common law as did warrant it, was repugnant to the statute of 1808, and inconsistent with the pre-existing laws; that after the adoption of the Constitution, the statute of 1808 still continued in force, and was confirmed by the declaratory portion of the chapter on criminal proceedings; and that this proceeding receives no warrant from that chapter of the Revised Statutes which adopts the common law, because, if in that particular the common law is adopted, it is repugnant to the pre-existing law of criminal proceedings.

We will not waste time by delaying, to argue that the course pursued in this case is inconsistent with the general spirit of our laws, and in derogation of the general rights of the citizen; for that is manifest, and cannot be controverted. We have merely to remark, in conclusion, that by law, every person against whom final judgment is rendered, has a right to his writ of error or appeal, and that if this proceeding be sanctioned, that right becomes nugatory, because, upon the writ of error or appeal, the recognizance does not come up as part of the record, nor can the defendant by any means except and make it part of the record; but the judgment must in each case be affirmed, whether there be in law any recognizance or not. The course of proceeding in England obviated any such difficulty, because the court

of the first instance could not issue the execution, but the recognizance was estreated at once into the highest court of the realm, and the party there had time to move to remit the penalty.

There is certainly no statutory provision, making bail in criminal cases responsible in any other manner, or to any greater extent, than in civil cases; and the construction of our judicial system forbids and prevents the adoption of the English practice. We submit, therefore, that the State's only remedy is by *scire facias*, or action of debt.

R. W. JOHNSON, Atto. Gen., *Contra.*

DICKINSON, J., delivered the opinion of the Court:

From the record before us, it appears that the State obtained judgment against the plaintiffs in error, purporting to be founded on a recognizance entered into by them, for the appearance of one of them to answer an indictment then pending against him. We have no statute specially defining the mode of proceeding to enforce the obligation of such recognizors, when the condition is broken; but that such obligation can be enforced, there is no doubt. Yet, in the proceeding to enforce it, the State, as well as every other suitor who seeks legal redress, is bound to adopt some form of remedy allowed or prescribed by law. In the present case, no process or pleading whatever is shown by the record; nor is it shown that the same were dispensed with by the plaintiffs in error, who do not in any wise appear to have had actual or constructive notice of the proceeding against them on the recognizance, without which, according to the repeated adjudication of this Court, no valid judgment could be entered against them. And if, as the argument of the counsel on the part of the plaintiffs seems to suppose, the recognizance was considered as possessing *per se* all the attributes of a judgment at law, the formal entering of judgment thereupon, as appears to have been done in this case, would be both unnecessary and improper, as tending not only to increase the cost, but also to vex and harass the parties, which the law will not permit, where no beneficial object is to be thereby attained.

It therefore becomes unnecessary for us to inquire whether or not such recognizance possesses in law the efficacy of a judgment, or

Johnstons *against* The State.

whether it does or does not warrant execution against the recognizors, where the condition is not complied with; because it appears affirmatively from the record, that the State has not proceeded in this manner to enforce the obligation of the plaintiffs in error. The judgment appears, therefore, from every view in which it can be legally considered, as wholly unauthorized by law. The judgment of the Circuit Court must therefore be reversed, and this case remanded to the Circuit Court of Hempstead county, to be there proceeded in by that Court, at the next regular term thereof, in accordance with the rule established in the case of *Gilbreath vs. Kuykendall*, 1 *Ark. Rep.*, 50; and that such other and further proceedings be had therein as may be in conformity with law and the opinion here expressed.