Robert Sans, impleaded with John P. Jordan, plaintiff in error, *v.* The People of the State of Illinois, defendants in error.

*Error to Scott.*

A *capias* was issued against one indicted, and an order of Court indorsed thereon directing the sheriff to take bail in the sum of one hundred dollars. An arrest was made, and a joint and several recognizance for his appearance, with surety under the penalty of fifty dollars, executed and delivered to the sheriff. The sheriff, perceiving that the penalty was not in compliance with the order of Court, returned it to the principal, who changed it to the sum of one hundred dollars. A few days after, the sheriff, having the recognizance in his hand, saw the surety, informed him of the alteration, and asked him if he would stand upon the bond as it was then, to which he replied in the affirmative, and that he would as soon be his security for one hundred as for fifty dollars. The principal not appearing as required by recognizance, the same was forfeited and a *sci. fa.* issued against him and his surety, which was served on the surety and returned *nihil* as to the principal. The surety pleaded *non est factum,* and verified the same by affidavit. The facts in regard to the alteration were proved at the trial. The Court instructed the jury that "by the alteration, the bond was rendered void, but, in the opinion of the Court, the subsequent assent of Sans, (the surety,) cured this defect and rendered him liable." *Held,* that the instruction was erroneous, the bond being rendered void by the alteration and a nullity, it could not be made valid by the subsequent assent of the surety.

The object of a *sci. fa.* on a recognizance is, to have execution according to the form, force and effect of the recognizance. Against the issuing of such execution, the party summoned may show for cause, that the principal in the recognizance has complied with its conditions, that the debt is paid, that there is no such record, &c.; but he cannot be permitted by plea, or otherwise, to change its nature or effect. If the recognizance is joint and several, and a *sci. fa.* is issued against the several cognizors in proper form, is served on one or more, and the writ returned *"nihil"* as to the others, judgment may be rendered against those served, that execution issue against them and each of them according to the conditions of the recognizance.

The writ of *sci. fa.* upon recognizances was given by the Statute of Westminister 2, 13 Edw. 1. and this statute being adopted in this State, a return of two writs *"nihil"* upon a *sci. fa.* issued on such instruments, is equivalent to actual service, and will justify the award of execution against those of the cognizors who cannot be personally served with process.

The doctrine laid down by this Court in the case of *McCourtie* v. *Davis,* 2 Gilm. 298, which was a *sci. fa.* against a garnishee in attachment, is reaffirmed; but the case of *Alley* v. *The People,* 1 Gilm. 109, so far as it conflicts with the doctrine of the present case, is overruled.

Scire Facias upon a joint and several recognizance, in the Scott Circuit Court. The cause was heard before the Hon. Samuel D. Lockwood, and a jury who rendered a ver-

dict in favor of the People for the penalty mentioned in the recognizance.

The evidence, pleadings and instructions are fully stated by the Court.

*M. McConnell,* in support of the assignments of error, cited *Alley* v. *The People,* 1 Gilm. 109–12; Rolle's Abr. 29 (*u*) pl. 5; *Dickens'* case, 6 Cowen, 59, 60; *Cleaton* v. *Chambliss,* 6 Rand. 86; 1 Espinasse, 81; 5 T. R. 537.

*D. B. Campbell,* Attorney General, for the People.

A bond may be altered by consent of parties. 9 Cranch, 28; *Dickens'* case, 6 Cowen, 59.

The judgment against Sans was properly rendered, he having been served with the *sci. fa.,* although Jordan was not served, or two returns of *"nihil"* as to him. 2 Pirtle's Dig. 315; Ibid. 366; 2 A. K. Marsh. 131; 4 Bibb, 181; 2 Littell, 286; 3 Blackf. 337; 1 do. 202.

*H. Dusenbury,* Circuit Attorney, filed the following brief:

1. It is insisted that the authorities referred to by the counsel for plaintiff in error do not apply to this case.

The Court below had jurisdiction, gave correct instructions to the jury, and properly entered the judgment against the party served. Rev. Stat. 413, § 2; *United States* v. *Cushman,* 2 Sumner, 310; *Chinn* v. *Commonwealth,* 5 J. J. Marsh. 29; *Burd* v. *Colgan,* 2 Littell, 284; *Lucket* v. *Austin,* 4 Bibb, 182; *Madison* v. *Commonwealth,* 2 A. K. Marsh. 131.

2. The plaintiff in error consented to the alteration made in the bond, and he cannot therefore take any advantage of such alteration.

A material alteration or interlineation does not render a bond void, if it be made by the consent of parties; whether the alteration or interlineation be made before or after execution, it is not avoided, and such consent may be proved by parol. *Sparks* v. *United States,* 9 Cranch, 23; *Wolley* v. *Constant,* 4 Johns. 54; *S. P. Kerwin's* case, 8 Cowen, 118; *Camden Bank* v. *Hall,* 2 Greenl. 583; *Warring* v. *Williams,* 8 Pick. 322; *United States* v. *Adm'rs of Hilligas,*

Sans *v.* The People.

3 Wash. C. C. R. 70; *Miller* v. *Stewart*, 9 Wheat. 680, 5 Peters' Cond. R. 727.

The Opinion of the Court was delivered by

PURPLE, J.* John P. Jordan was indicted at the May term 1845, of the Scott County Circuit Court, for obtaining money under false pretences. A *capias* was issued for his arrest, upon which the sheriff was directed to take bail in the sum of one hundred dollars, for his appearance at the succeeding term. Jordan was arrested, and applied to Robert Sans to become security for his appearance at Court. A joint and several recognizance was drawn up, with a penalty of fifty dollars, and signed by Jordan and Sans, and delivered to the sheriff. Upon receiving it, the sheriff noticed that the penalty was not sufficient in amount as required by the order of the Court. Whereupon, Jordan, as it appears, in the absence of Sans, altered the penalty, by striking out $50 and inserting $100. A few days after, the sheriff, having the bond or recognizance in his possession, and holding it in his hand, saw Sans, told him of the alteration, and asked him if he would stand upon the bond as it was then. To which Sans replied that he would; that he would as soon stand Jordan's security for $100 as $50.

At the October term succeeding, Jordan not appearing to answer to the indictment, his recognizance was forfeited, and a *scire facias* issued against him, and Sans, his security. Process was served on Sans, and returned *nihil* as to Jordan. Sans appeared, and pleaded *non est factum*, and verified his plea by affidavit. On the trial, the facts before recited in relation to the alteration of the recognizance appeared in evidence.

The counsel for Sans requested the Court to instruct the jury:

"That the alteration of the bond from $50 to $100, under the circumstances, rendered it void, and that being a nullity, the subsequent verbal assent of Sans, as stated in the evidence, did not make it valid."

* WILSON, C. J. and Justices LOCKWOOD and YOUNG did not sit in this case.

This instruction was refused, and the Court instructed the jury that

"By the alteration, the bond was rendered void, but, in the opinion of the Court, the subsequent assent of Sans cured this defect, and rendered the plaintiff liable." Sans excepted to the opinion of the Court, and tendered his bill of exceptions, which was signed and made part of the record in the cause. The jury returned a verdict against the plaintiff, upon which judgment was rendered by the Court.

The plaintiff now assigns for error the decisions of the Court in its instruction to the jury, the withholding of the instruction asked, and the rendition of the judgment against Sans alone upon a return of one *nihil* only against Jordan.

The questions arising on the last point made will be first considered. It is deemed important to the public interest and especially so to the due administration of criminal jurisprudence, that the law applicable to the writ of *scire facias* upon recognizances should be settled and understood. The writ is of ancient origin. As a common law process in real actions, it was much used prior to the thirteenth century and in the time of Edward I. during whose reign it was extended to several species of actions personal in their character. As defined, it is a judicial writ, founded upon some matter of record as judgments, recognizances and letters patent, on which it lies to vacate, set them aside or enforce their execution.

Although it is a judicial writ, or writ of execution, yet it is so far in the nature of an original action, that it may be pleaded to by a defendant. 6 Bacon's Abr. 103. The same author on the succeeding page says, that "it has been doubted whether this writ lay at Common Law; but this doubt arose for want of distinguishing between personal and real actions. At Common Law, if after judgment given or recognizance acknowledged, (in personal actions,) the plaintiff sued out no execution within the year he was driven to his original upon the judgment, and the *scire facias* in personal actions was given by Statute of West. 2, 13 Edw. I." The question directly presented by this record is, whether, when a *scire*

*facias* is issued against two upon a joint and several recognizance, execution can be awarded against one served, without personal service upon, or two returns of *nihil* as to the other.

In the case of *McCourtie* v. *Davis*, 2 Gilm. 298, the writ of *scire facias* for the appearance of a party to answer to a criminal charge is among those enumerated as being given by our statute. Upon mature reflection and examination we are satisfied that it is not thus given, but only its existence and the right to use it therein recognized. The language of the statute is, that "the bail for the appearance, &c. may, at any time before judgment is rendered upon *scire facias* to show cause why execution should not issue, &c., seize and surrender the principal in discharge of such recognizance;" thus clearly indicating that the process and the right of the people to employ it in obtaining execution upon such recognizance is derived from some other source than this statutory enactment. The Common Law of England, so far as the same is applicable, and the Acts of the British Parliament made in aid thereof prior to the fourth year of the reign of James I., with certain specified exceptions, are the law of this State.

We have before shown, that the writ of *scire facias* in actions like the present was given by the Statute of West. and not by Common Law. This statute is made in aid of the Common Law, and is not one of the exceptions mentioned in our Act adopting the Common Law and Acts of the British Parliament made in aid thereof. It is applicable to our situation and condition, and so far at least as this question is concerned, is in force within this State. A recognizance, when forfeited, becomes a debt of record, having many of the attributes and qualities of a judgment of a Court of record. In England, it had priority in point of payment and was a lien upon the lands of the cognizor. In this State, for the want of statutory regulations upon the subject, the law in these respects has been held otherwise. But even here it is the acknowledgment of a joint and several debt of record. Each of the several cognizors admits upon the record that he, separately as well as jointly with his co-obligors, is indebted

to the people of the State in the sum specified in the recognizance to be paid upon certain conditions therein expressed. What, then, is the object or office of the *scire facias* which issues upon such recognizance? Not to permit the defendant to appear and defend himself by a denial of the existence of the debt which he has already admitted upon the record; not that he shall allege that another who is not summoned has admitted the same debt in the same solemn manner against himself; but to have execution, not in the manner used· in ordinary cases of judgments at Common Law, but according to the *form, force* and *effect* of the recognizance. Against the issuing of such execution the party summoned may show for cause, that the principal in the recognizance has complied with its conditions; that the debt is paid; that there is no such record, &c.; but he cannot be permitted by plea or otherwise to change its nature or effect. By the record, to do this, he is estopped.

The authorities upon this point are numerous, consistent, uniform, universal. We have examined many and have not found an exception.

"In debt, the plaintiff may bring one action against all the persons bound in the recognizance; or several actions against each. But one *scire facias* seems in all cases to be sufficient; and the recognizance being joint and several, it is holden, that the execution may be several, though the *scire facias* was joint; for the judgment is not to recover, but to have execution according to the recognizance." 2 Tidd's Pr. 1099.

"If two persons acknowledge a recognizance jointly and severally, the conusee may sue out several writs of *scire facias* against the conusors." 2 Saunders, 71, note.

"If two acknowledge a recognizance of £100, jointly and severally, the conusee may sue several *sci. fa.* against the the conusors upon this recognizance." 6 Bac. Abr. 109.

These cases all make reference to Co. Litt, 292, and 2 Inst. 395, authorities which we have not been able to examine.

The case of *Sainsbury* v. *Pringle,* 10 Eng. Com. Law R. does not controvert the principle before laid down. In that

case, the *scire facias* was against two jointly, as bail of a third person. The summons was joint, commanding them, not each of them, to appear and show cause, &c. One was served, and two returns of *nihil* made as to the others. The declaration, which, by our statute is dispensed with, the *scire facias* being substituted therefor, was against the one served only. The Court held, that the *scire facias* being joint, and not several in its terms, the declaration should be joint, and no proceeding could properly be had against one until all were brought into Court. The decision, however, appears to have been made entirely upon the technical ground of the irregularity proceeding from the variance between the description and mandatory parts of the *scire facias*, and the declaration.

All the American authorities which we have examined, lay down the law as settled, that where a *scire facias* upon a joint and several recognizance issues in proper form against the several cognizors, if one or more are served, and the, writ is returned *nihil* as to the others, judgment may be rendered against those served, that execution issue against them, and each of them, according to the conditions of the recognizance. We shall only refer to some of the adjudicated cases, deeming it unnecessary particularly to review them. *Madison v. Commonwealth,* 2 A. K. Marsh. 131; *Chinn* v. *Commonwealth,* 4 Bibb; *Bruce* v. *Colegrove,* 2 Littell, 284; *Lucket* v. *Austin,* 4 Bibb, 181; *Fourlee* v. *Commonwealth,* 4 Munroe, 128; *Adair* v. *The State,* 1 Blackf. 201. These authorities being in point, and based upon sound legal principles and obvious distinctions, are decisive of this question.

We are, also, of opinion that inasmuch as the *scire facias,* in cases like the present, is not given by our statute, and the statute of Westminster is by adoption in force in this State, that a return of two writs *nihil* upon a *scire facias* upon such recognizance is equivalent to actual service, and will justify the award of execution against those of the cognizors who cannot be personally served with process.

In the case of *McCourtie* v. *Davis,* which was a *scire fa-*

*cias* against a garnishee in attachment, for the reason that the statutes of our State have in several instances made use of the terms *summons, scire facias,* and *scire facias* in the nature of a *summons,* indiscriminately, without regard to the original sense and meaning of the words, in some cases plainly indicating that personal service was still required, in others leaving it doubtful and uncertain, and again in others showing that manifest injustice must ensue, and the grossest frauds be perpetrated, if personal service was not made upon defendants, the Court felt constrained to lay down a general rule relative to such process thus given and unknown to the Common Law, by which the spirit of the enactments might be preserved, and the disastrous and unjust consequences apprehended from an opposite one might be avoided.

We believed the rule established in that case the more equitable and just one, and the best which, under the circumstances, could be adopted. We are of that opinion still. But, upon reflection and careful consideration, we are convinced that the case of *Alley* v. *The People,* 1 Gilm. 109, so far as it conflicts with the principles here advanced, is not law, and the same to that extent is overruled. And the law is held to be, that where a *scire facias* issues upon a joint and several recognizance of this nature, and service is had upon one or more of the cognizors, execution may be awarded against those served with process upon a return of *nihil* against such as are not found; and, also, that in cases like the present, under the statute of Westminster before referred to, two returns of *nihil* upon writs of *scire facias* are equivalent to actual service on the party.

We have had considerable difficulty in arriving at a conclusion relative to the other question presented by this record. No authority expressly in point has been cited or found. It is settled by numerous cases, that where a blank is left in a deed at the time of its execution, and special authority is given to a third person to fill up the same at a subsequent period on ascertaining facts necessary to enable him to do so according to the original understanding of the par-

ties, and also that where an alteration or interlineation is made in the presence of the parties and with their assent, the instrument will be valid.

Upon the question whether the consent or admission of the obligor in a bond, or grantor in a deed, given or made after an alteration or interlineation, will be binding, there seems to be much doubt and uncertainty from the decisions which have been made bearing upon it. I will briefly state some of the cases, and the principles decided upon both points.

In *Decker's* case, 6 Cowen, 59, one Baker recovered a judgment against Decker before a justice. Decker sought to appeal. A bond with a blank for a penalty was prepared, executed by Decker and a surety which was delivered to a subscribing witness with power to fill up the blank and make other alterations to render it valid according to the statute. The witness carried the bond to the justice, ascertained the amount of the judgment and filled up the bond. Afterwards and within the time for appealing, the witness, supposing the bond defective, added a clause obliging the obligors to pay the judgment before the justice, with the interest and costs. The Court say: "Though the agent might have had power to correct the bond on its delivery, (a point on which it is not necessary to decide,) he certainly had no right to tamper with it in this way. He could not alter it again and again at his discretion. Such a general power cannot extend beyond the time of its delivery. Its force was spent on filling up the blank."

In the case of *Sparks* v. *United States*, 3 Peters' Cond. R. 244, a bond after its execution was altered by striking out one obligor and inserting another by the consent of all the parties. This was held valid upon the ground that the alteration was made by the concurrence of all. To the same effect are the cases of *Warring* v. *Williams*, 8 Pick. 322, and *Wolley* v. *Comstock*, 4 Johns. 54.

In *Kerwin's* case, 8 Cowen, 118, one Polley appealed from the judgment of a justice. A bond in blank as to the recital of the judgment was prepared and signed by Polley and his surety. The surety, by parol was authorized to fill

up the blank and deliver the bond for both, which was done and the bond held to be obligatory upon both obligors.

In the case of *Byers* v. *McClenahan*, 6 Gill and Johns. 250, the defendant had executed a bond entirely in blank. It was filled up and afterwards shown to him, and he admitted his signature and did not deny that he would be bound by it. Held, that it was a valid bond.

"If the name of an obligor be signed without his authority, yet if he afterwards acknowledge the bond to be his, he will be bound." *Hill* v. *Scales*, 7 Yerger, 410.

"The consent of an obligor to an alteration of a bond given after an alteration is made will not repel the plea of *non est factum;* but if given before or at the time of the alteration, it will be considered as a re-execution." *Cleaton* v. *Chambliss*, 6 Rand. 86.

The two last cases cited are only found in 1 U. S. Digest, the Reports referred to not being within our reach for examination. From the brief statement therein made, they would seem to be in conflict. There is, however, one general principle which runs through all the cases in relation to alterations and interlineations of a material character in all instruments under seal. And that is, that as to such of the parties thereto who have not, prior to or at the time, assented to the alteration or interlineation, the instrument is absolutely void. *O'Neale* v. *Long*, 2 Peters' Cond. R. 24; 4 Wash. C. C. R. 26; *Warring* v. *Williams*, 8 Pick. 322.

The question, then, in this case, is, shall that, which, in contemplation of law so far as the plaintiff in this record is concerned, was absolutely void and of no more efficacy than a sheet of blank paper without a signature, become valid and obligatory upon his subsequent parol assent that he would be bound by it as altered and amended?

In determining questions of this sort, it is the duty of the Court to look beyond the particular case under immediate consideration, to the consequences which must result from the workings of the general rule to be established. Probably, in this instance, no great injustice would be done by holding the plaintiff to the payment of this penalty. It is most likely,

although the alteration was not pointed out, nor the bond read to him, that he fully understood its extent and character, and designed and intended to become liable thereon in case the principal failed to appear and answer to the charge preferred against him. But was it his deed? If, without any previous consultation with the plaintiff, the sheriff who took this bond had drawn it up, signed it with the plaintiff's name and attached his seal, and afterwards met the plaintiff in the street, informed him what he had done, and asked him if he would be bound by such act, and the plaintiff had consented, we apprehend it would scarcely be pretended that such an acknowledgment would have rendered the plaintiff liable upon the bond; or that any binding contract under seal or otherwise could be thus signed, sealed and delivered by parol. Wherein consists the difference between the supposed and the present case? In either, at the time the instrument is written it is void. It is not *then* the party's deed. Can it then become so by a bare acknowledgment of the supposed obligor that he is willing to be bound by it, and that, too, without any examination of its contents and conditions? The very thought is startling. Accustomed, as we have always been, to the idea that there was a deliberative solemnity about a written contract under seal, we are naturally alarmed at the inroads which the progressive science of the law is continually making upon ancient and well established landmarks which have stood the test of ages and of time.

When the party to be charged consents at the time to the alteration, there is a mixture of consideration and deliberation in the act which gives evidence of his intention to make the deed his own. But an agreement to be responsible, after such alteration has been made, should not bind him unless the act of recognition should be of a character so unequivocal that no doubt could remain that in legal contemplation at least, there was a making and delivery of the deed. Delivery is essential to the validity of every instrument under seal. It is not indispensable that this should be done in person by the party signing it. It may be done by some person in his behalf, and in some cases even by legal implication.

But it must be done. When was this bond delivered? What has the plaintiff done, which, in contemplation of law, amounts to such an act? He had been informed that it had been altered; that the penalty had been increased without his knowledge or consent, and upon such information he stated that he was still willing to be bound by it in its amended form. It was then void. In fact the plaintiff has neither signed, sealed or delivered it since, in person or by agent, nor, as we think, done any act equivalent thereto.

If, under these circumstances, we hold this bond obligatory, we know not where we could establish the boundary line between mere verbal, parol and written contracts under seal, and should be reduced to the necessity of permitting it to rest entirely in the recollection of witnesses, and not in the solemn act of the party to prove whether a written instrument was his deed or not. On the whole, we are of opinion that the plaintiff should have had judgment in his favor in this case upon his plea of *non est factum*, and that the Court should have instructed the jury as requested by the plaintiff, and withheld the instruction given.

The judgment of the Circuit Court is reversed.

*Judgment reversed.*