## Aaron Lang and others v. The People.

*Constitutional Law. Criminal recognizance.* Whether the statute of 1861, p. 136, permitting the entering up of judgment summarily, and without suit or notice, upon a criminal recognizance, two days after forfeiture is entered of record, unless cause to the contrary be shown, is constitutional, *quere?* the Court being equally divided.

*Heard November 7th,* 1865.  *Decided July 11th.*

Error to St. Clair Circuit.

The facts are stated in the opinion.

*Maynard & Meddaugh,* and *J. S. Crellin,* for plaintiff in error.

1. The statute under and by virtue of which judgment was rendered, clearly contemplates the service of notice of some kind upon the persons entering into and executing such recognizance, that the default has been entered, &c., so that they may have an opportunity to appear and show cause why judgment should not be entered against them; and that it was the duty of the Prosecuting Attorney to have given defendants below notice of the proceedings before judgment was rendered.—*Sess. L.* 1861, *p.* 136.

No notice or process of any kind was served on defendants in this case.—*Scire Facias,* 4 *Bouv.* 84, *L.* 1863.

2. If such statute does not contemplate or provide for the service of some such notice, or of process of some kind, before the rendering of judgment, so as to give the defendants a

day in court, it is unconstitutional and void, because it deprives a man of his property without due process of law.— 5 *Mich.* 251; 11 *Id.* 113.

*A. Williams, Attorney General,* for the People.

1. The plaintiff in error was not entitled to the service of any process or notice informing him of the time and place when and where the people would move for such judgment, or that they had any intention of ever, any where, doing so. —*Sess. L.* 1861, 136.

2. The act does not contemplate the service of any process or notice; for if it had, it is reasonable to say, that it would have prescribed in substance, by whom it should be issued or signed, and the time and manner of the service of the same.

3. Giving the above mentioned act the construction contended for by us, vests it with no extraordinary character. We have other statutes, some of which have been held to be constitutional, and others not questioned, which confer powers equally large. See the following, to wit:—*Comp. L.* § 822; 5 *Mich.* 251; *Comp. L.* §§ 4502–5; 4 *Mich.* 316; *Comp. L.* § 3866.

4. The said default having been rendered by the court, the true practice was to move that it be set aside or vacated, upon an application made to the court, based upon a proper and sufficient showing. The force and effect given to it by said act, No. 106, while it remained an order or judgment of the court, could be avoided in no other way.—10 *Mich.* 113.

5. Nor is said act, No. 106, in conflict with that part of Art. 5, of the amendment to the Constitution of the United States, which provides that "no person shall * * * be deprived of life, liberty, or property without due process of law;" for this article was designed only as a limitation or restraint upon Federal power and authority.—5 *How.* 434; 7 *Pet.* 243.

6. Nor does said act, 106, at all conflict with so much of sec. 32, Art. 6, of our State Constitution as provides that "no person shall * * * be deprived of life, liberty, or

property without due process of law." This constitutional provision has the same meaning as the phrase, "the law of the land," and was designed to prevent special legislation which might operate unjustly and unequally upon individuals against their will, and not legislation general in its operation, and that affects the rights of all alike. The act in question is of the latter class, and was not intended to operate upon the rights of the plaintiff in error, or any other individual, as such. This, of itself, is sufficient to take it from under this part of our State Constitution. — 5 *Mich.* 251; 19 *Wend.* 659, 675.

7. While Congress possesses only such powers as have been expressly granted to it, or are necessary to make effectual such powers, our State Legislature possesses all legislative power, not prohibited by the express words of the Federal or State Constitution, or by some necessary implication of one of them. There is no express provision in either of the above mentioned constitutions, against the passage of the act in question; and we submit that there is no necessary implication of any section or clause of one or the other of them, with which the above mentioned act, or any of its provisions, at all conflicts. After all, the real question, as it regards the validity of said act, is one of power on the part of the Legislature, and into which expediency does not at all enter.—5 *Mich.* 256–9.

COOLEY J.

The judgment in this case recites that the said Aaron Lang, being under recognizance in the sum of three thousand dollars to appear and answer to an information to be filed for uttering counterfeit money as true, with Moses Lang and John S. Crellin as sureties, and having failed to perform the condition of such recognizance, which failure has been entered of record by order of the Court; and more than two days having elapsed since such entry, and no good cause to the contrary appearing, it is thereupon ordered that judgment be

entered, &c. The only assignment of error is, that the judgment was rendered "upon a certain recognizance purporting to be signed and entered into by the plaintiffs in error, without giving notice to the plaintiffs in error or either of them, by the service of process or otherwise, that any proceedings were to be had against them or either of them upon said recognizance, whereby the plaintiffs in error were deprived of their right to contest the question of their liability upon said recognizance." Another error was suggested on the argument, but as it was not specially assigned, we must consider it, under our rules, as waived.—*Sup. Court Rule,* 12; *Webster v. Fisk,* 9 *Mich.* 250.

The questions which arise in the case, are, *First,* whether the statute authorizes judgment to be thus entered up, upon default being entered, without notice to the conusors; and if so, then, *Second,* whether such statute is constitutional. And we may be aided in coming to a conclusion upon these questions, by considering what was the nature of a recognizance, and what the effect of forfeiture at the common law.

A recognizance is said to be an obligation of record, with condition to be void on performance of some act specified. It is entered into either before some court of record, or before a magistrate out of court, and afterwards enrolled in a court of record; but in the latter case it is the acknowledgment that gives the recognizance its force as a record, and the enrolment is for safe custody and notifying it to others.—2 *Tidd's Pr.* 1083–4; 2 *Wms. Saund.* 8, i. (5) *and cases cited.* When forfeiture is declared and duly entered of record, the liability of the conusor is regarded as fixed, though there were always modes in which matters of excuse or of equitable consideration might be afterwards presented, depending somewhat on the nature of the case. If the condition was the performance of some act in court—as to appear and answer, or to give evidence, or prosecute—the breach is to be adjudged by the court and entered of record when it occurs; while a recognizance to keep the peace would stand upon a somewhat

different footing, and a forfeiture could only be declared after trial, and upon proof of facts of which the courts could not judicially take notice.—*Bac. Abr. Scire Facias*, 2; 2 *Tidd Pr.* 1093; 2 *Carr. & P.* 10, *and note; Queen v. Justices, &c.*, 7 *A. & E.* 583. A recognizance binding a party to appear in court, is said to be forfeited if he fail to appear, be the cause of his absence what it may.—*Regina v. Ridpath*, 10 *Mod.* 154; *Rex v. Hankins*, 1 *McClel. & Y.* 27; and in England it then became liable to be *estreated*; that is, taken out from among the other records and sent up to the Exchequer, which rendered the conusor an absolute debtor to the crown for the sum or penalty therein mentioned.—3 *Pet. Abr. Bail IX*, 1; 14 *Id. Recognizance, IX, note; Pet. on Bail*, 536; 2 *Chit. Gen. Pr.* 296.

The principal question here is, as to the proper mode of enforcing a forfeited recognizance. The regular mode in England is said to be an extent in chief; though a *scire facias* is sometimes issued if it be doubtful whether the recognizance is forfeited.—2 *Tidd's Pr.* 1091. The process by extent does not exist in this country, and independent of statutory provisions prescribing a different course, the proceeding by *scire facias* would be the proper one.—*Pinckard v. People*, 2 *Ill.* 187; *Alley v. People*, 6 *Id.* 109; *Sans v. People*, 8 *Id.* 327; *Besimer v. People*, 15 *Id.* 439; *Choate v. People*, 19 *Id.* 63; *Weese v. People*, 19 *Id.* 643; *Graham v. State*, 7 *Blackf.* 313; *Hall v. State*, 15 *Ala.* 431. But it has been held that an action of debt might also be brought.—5 *Dane Abr. Ch.* 150, *Art.* 4; *People v. Van Eps*, 4 *Wend.* 390. In either proceeding the recognizance, being a record, would import absolute verity, and would not be open to contradiction by parol evidence.—*People v. Kane*, 4 *Denio*, 543. The record of the forfeiture, I apprehend, would stand upon the same footing. But evidence might be received to show the recognizance forged; for if forged it was no record.—*Patton v. Miller*, 13 *Sergt. & Rawle*, 254; *Elliott v. Green*, 10 *Mich.* 113; and the question of the indentity of the defendant with the conusor

would always be open.  The defendant might also plead any
matter of discharge subsequent to the forfeiture; and it has
been held a good bar to the action that performance by the
principal was prevented by the act of God,—*People v. Man-
ning,* 8 *Cow.* 297; or by his imprisonment elsewhere.—*People
v. Bartlett,* 3 *Hill,* 570.

But it is obvious that matters of excuse or discharge can
only be presented by plea, when enforcement is sought by
suit; and if suit was always essential, there could be no neces-
sity for presenting such matters in any other mode.  But the
Court of Exchequer seems to have had original jurisdiction to
relieve on motion; and by statute—4 *Geo. III. c.* 10—obtain-
ing relief in that court by petition was made more easy and
less expensive.—14 *Pet. Abr. Recognizance, XI, note; High-
more on Bail,* 203; *Note to* 8 *Exch.* 822.   A form of
petition for this purpose, in a case where the indictment
against the party bound to appear was ignored, will be found
in *Crown Cir. Companion,* 1 *Am. ed.* (1816) *p.* 24; see also
2 *Chit. Gen. Pr.* 397.   The subsequent statute of 3 *Geo. IV,
c.* 46, has been held to take this power away from the Exche-
quer in cases of recognizances, forfeited at General or Quarter
Sessions, but it authorized those courts to inquire into the
circumstances of any case, and at their discretion *to order the*
discharge of the whole of the forfeited recognizance, or any part
thereof.—See *Rex v. Hankins,* 1 *McClel. & Y.* 27.   The still
later statute of 7 *Geo. IV, c.* 64, § 31, in view of the hardships
frequently resulting from the indiscriminate estreating of
recognizances, imposed an important restraint upon that process
by requiring a list of the forfeitures to be laid before a judge
of the court where the parties were bound to appear, who
was empowered to make such order touching the estreating
or putting in process of the forfeited recognizance, as to him
should seem just. — 14 *Pet. Abr. Recognizance, XI, note.*
There was thus a consideration of the case by the judge
before estreat, which, however, did not preclude the Court of
Exchequer from granting relief afterwards on the party's peti-

tion.   The forfeited recognizances mentioned in statute 3 *Geo. IV*, c. 46, § 4, were collected by writ of *distringas* and *capias*, or *fieri facias* and *capias*, unless relief was obtained from the court in the manner therein pointed out.—14 *Pet. Abr. Recognizance, XI, note.*   These statutes are only important here as they tend to show the understanding as to the legal effect of forfeiture.

In the revision of our statutes in 1846, it was deemed proper, for some reason, to provide specially the mode of enforcing the penalty of a criminal recognizance, by action of debt or assumpsit.—*R. S. Ch.* 128, § 30; *Comp. L.* § 5140.  The object of this provision was perhaps to substitute the more familiar forms of action for the proceeding by *scire facias ;* though, as we have already seen, an action of debt might have been brought without any such statutory provision.

It was found, however, that leaving the forfeitures to be enforced by suit was not a very effectual way of securing the purposes for which recognizances are taken; and that especially in those counties where the business in the prosecuting attorney's office was large, suits sometimes failed to be brought after forfeiture, and sureties in criminal cases relied somewhat upon negligence in this regard for their immunity. It was accordingly provided by the act of 1861 (p. 136), that after the forfeiture shall have been duly entered of record, "it shall be lawful for the court, after two days thereafter, unless good cause to the contrary be shown, to enter a judgment thereon in debt, and to order an execution to issue thereon," "for the full amount or sum specified in the said recognizance."   I see no reason to doubt that this statute is designed to authorize the entry of judgment upon the recognizance, without the service of any process, or notice, if the parties to it fail to come in and excuse the default within the two days allowed by the statute for that purpose.  The sole remaining question is that of constitutional power to pass this statute.

I have not been able to satisfy myself that the statute violates any provision of the constitution.  The recognizance

being entered into in view of the statute, the conusors must
be taken to assent to judgment being entered in the mode the
statute provides; and the same effect is to be given to their
obligation, as if a stipulation for such judgment were inserted
in it.—*Chappee v. Thomas,* 5 *Mich.* 53. It cannot be said
that the party is condemned unheard when he has stipulated
that the proceeding may be taken against him, any more than
where judgment is entered up on warrant of attorney.    More-
over the recognizance is itself a notification to the parties to
be present at the time appointed, and their express under-
taking is that the penalty may be levied of their property if
they fail to present the principal at that time. It is this
undertaking which gives the court jurisdiction to adjudge the
forfeiture; and the subsequent proceedings are only for the
purpose of obtaining execution of a debt already fixed.

All the direct authority there is upon the subject is in favor
of the constitutional power.    The validity of a similar provi-
sion seems to have been assumed in *People v. Van Eps,* 4
*Wend.* 390, and was directly affirmed in *Gildersleeve v. People,*
10 *Barb.* 35. See also *People v. Lott,* 21 *Id.* 130. There is
no case opposed to these, and they do not appear to me to be
unsound.

There are doubtless objections to leaving matters of excuse
or discharge to be presented by motion on affidavits; but they
are objections of the force of which I think the legislative
department must judge. The questions of fact are however
the same, or similar in character, to those which are presented
by motion in other cases where a party has incurred, or is
supposed to have incurred, an obligation of record.    The
genuineness of a cognovit on which judgment has been
entered, or the discharge of the demand by payment or other-
wise after its date, or the satisfaction of judgment in any
other case, may be a question proper to be passed upon by
jury, but it must also be sometimes disposed of on summary
application. It could hardly be claimed that a judgment on
cognovit was erroneous because the defendant was not

allowed to put in issue before a jury the question of payment between its date and the rendition of judgment, though the authority to enter up judgment was expressly, or by implication, subject to the condition of non-payment.

I am unable to distinguish this case in principle from that of *Chappee v. Thomas*. It is true that in that case the undertaking of the surety was, in effect, to abide the judgment of the court against his principal; but it is obvious that he might still have legal defenses which would not be open to the principal, and which he must still have the opportunity to make in some form. The ground of that decision was not that the surety was absolutely bound by a finding against his principal, but that, by his contract he had consented to judgment being taken in that form.

The consequence is, that matters of legal defense which he might make before a jury, if the bond were sued, are now left to be presented by motion, or by some other proceeding, to vacate the judgment. In *Lewis v. Garrett's Administrators*, 6 *Miss.* 434, the question was elaborately argued whether a statute authorizing judgment to be entered up against the sureties in a sheriff's bond, without suit, where the sheriff's return showed a liability, was constitutional; and the court sustained it on the same ground embraced in the decision in *Chappee v. Thomas*. Similar statutes are referred to in that decision, with the cases sustaining their validity. And it was held not to be an objection that such a law deprived the party of his right to a jury trial, inasmuch as by his contract he had assented to waive it. The case of *Pratt v. Donovan*, 10 *Wis.* 378, is also in point. The statute brought under review in that case authorized judgment to be taken on motion against the sureties in a replevin bond, jointly with the principal, without the service of either process or notice upon the sureties. The court held such a judgment valid on the ground that by entering into the bond the sureties had assented to it, and waived their right to a trial in the ordinary

mode. The case of *Gildersleeve v. The People* is expressly referred to with approval in this decision.

If any importance can be given to the fact that in the case before us the People are the party plaintiff, and that against them some common law remedy could not be taken which might be open in other cases, I do not see how any principle can be affected thereby. The People, in their collective capacity, might have occasion to bring replevin, or enforce a sheriff's bond, or take judgment by cognovit; and there can be no question of their right to take the ordinary proceeding. No one, I presume, will contend that they would be deprived of this right, on the ground solely that all the same remedies might not be open to the defendant as if he were sued by a private individual.

I am of opinion that the judgment of the Circuit Court was correct, and should be affirmed.

MARTIN CH. J. concurred.


CAMPBELL J.

Judgment was rendered in the St. Clair Circuit Court against plaintiffs in error upon a criminal recognizance. No notice of any kind was given of the motion for judgment, which was *ex parte*, and made in supposed conformity to the *Statute of* 1861, *p.* 136.

The record is otherwise defective; but, as this is the only error assigned, there is no occasion to consider any other point. The question to be disposed of is whether such a judgment can be sustained.

It is claimed, on behalf of the people, that a recognizance, when filed, becomes record evidence of a liability, and that upon forfeiture declared this becomes complete without further ceremony. The law is plain that a recognizance becomes a record obligation; but this is simply because the party acknowledges it in the solemn manner necessary to give it judicial sanction. But whether a conditional liability

acknowledged by a party can become absolute by proceedings which he does not acknowledge, and has no opportunity of being heard upon, is a very different question, by no means dependent upon the character of the original obligation. A man may be estopped in many ways from disputing a conditional obligation, but whether the condition has been broken or not is a very different thing, upon which, in ordinary cases, he certainly is to be heard. And if such is not the case concerning criminal recognizances, it must be owing to some peculiar rule which distinguishes them from common debts.

If a recognizance bound the maker at all hazards, and without regard to circumstances, to respond if the person charged should fail to appear in court at the time appointed, then there could be no great difficulty in maintaining the completed liability upon any such failure. But such is not the character of the undertaking. There are many cases in which, by compulsion of law, or by unavoidable accident, or by the action of responsible officers or parties, the person charged is lawfully prevented or excused from such appearance. And it has never been supposed by any one, and certainly no one has produced any decision tending to support the notion, that a failure to appear always absolutely forfeits the recognizance. Death, or lawful imprisonment, or absence under compulsion of law, are familiar instances of valid reasons for non-appearance. Nor has the law in all cases required the appearance to be impossible. For in the early statutes on this subject it was distinctly provided that, upon all debts and obligations to the crown, any defense based upon " *law, reason, or good conscience,*" was admissible; and these words received a large and not a limited construction.— *Tomlyn's Law Dic. "King."* 6; 7 *Coke's R.* 19 *b*, 20 *a*; *Tidd's Pr.* 1077.

A record obligation to the king was in most cases enforced in a somewhat different manner from the claims of individuals. By certain early statutes, debts created in the form of recognizances were enforced by peculiar proceedings in the Exchequer, sometimes by *scire facias,*

and sometimes by *extendi facias*. There is some reason to doubt whether criminal recognizances came within the same rule with those which were merely money obligations; and I have been able to find no case in the English books which classed them together. But the matter is not very important, for there never was any process to collect -any royal debt, which condemned the debtor without giving him a chance to be heard in his defense. Some confusion has arisen from the fact that an extent is a species of execution, and that sometimes an immediate extent might issue before or without a *scire facias*. The only case in which an immediate extent was permitted was where there was an affidavit filed, showing a positive indebtedness, and an immediate danger to the debt, in which case a *fiat* was granted by a Baron of the Exchequer.

This affidavit was required to comply strictly with the law, and to show insolvency.—*King v. Marsh*, 13 *Price*, 826; *Rex v. Pearson*, 3 *Price*, 288, 292. It is held in this last case that the Crown has no right to elect between *scire facias* and immediate extent, but must make out a clear case of insolvency. It is also held, contrary to some loose *dicta* formerly received, that the whole proceedings connected with the collection of crown debts are at law, and not in equity; and that the parties' rights are legal and not subject to discretion. — *Cases above, and* 11 *Price*, 643, *cited in note to Tidd's Pr. p.* 1048. It is also laid down that an extent will not lie if there is any doubt about the obligation being clearly forfeited.— *Tidd's Pr.* 1045, 1091. Nor does it lie against sureties.— *Tidd's Pr.* 1046, 1091. And where the obligation was conditioned to collateral purposes, and not for a mere debt, it seems an extent was not granted.—*Ib.* (And see also *King v. Lamb*, 13 *Price*, 649.)

But the extent, even if granted in such cases, did not cut off the party from any defense. It was rather analogous to proceedings in attachment, where upon a proper showing .there may be .a preliminary seizure of property, to answer

any final adjudication, but where the merits are in no way prejudiced by the preliminary steps. The party charged had a right to introduce any defense of law or of fact, and might interpose objections in the nature of a demurrer, or might plead, and traverse or avoid the facts on which the recovery depended. In short, he could use any defense in these proceedings, as fully and completely as on *scire facias.—Tidd's Pr.* 1077. The cause might be tried either at *nisi prius* or at bar.—*Id.* 1080. And if the defendant prevailed he was entitled to an *amoveas manus*, whereby the seizure was remitted.—*Id.* 1081.

But, as already suggested, it is by no means clear that criminal recognizances were under any circumstances enforced without *scire facias.* There are very few authorities on the subject, but there seems to have been a general recognition of the illegality of proceeding without a regular suit in any case. It is said, in *Rolle's Abr.* 900, that the Sessions cannot proceed against recognizors for non-appearance or for breach of the peace, but that the recognizance should be removed into one of the courts at Westminster Hall, who should proceed by *scire facias* upon it, and not by indictment, *for the reason that the party might have some good defense that he should be allowed to plead.* This doctrine is recognized and approved by the text writers generally.—*Bacon's Abr. "Scire Facias," C,* 2; *Hawk. P. C. Book* 1, *ch.* 60, § 18; *Tomlyn's Law Dic. "Surety of the Peace," " Scire Facias,"* 3; 4 *Inst.* 181. The practice is described in a note to *Rex. v. Wiblin,* 2 *C. & P.* 10. And in the case of *The Queen v. The Justices of the West Riding of Yorkshire,* 7 *Ad. & El.* 583, the court refer very plainly to the illegality of attempting to fix a party's liability without a trial. See also note to *Rex v. Hankins, McC. & Y.* 26–31; *In re White,* 1 *New Sess. ca.* 9; cited, 5 *Harr. Dig.* 1514. In many cases the recognizances might be estreated into the Court of Chancery or King's Bench, as well as into the Exchequer, and could not then be carried into the Exchequer until after judgment on *scire facias,* and

the return of a *fi. fa.* or *ca. sa.* unsatisfied.—2 *C. & P.* 10; *Hawk. P. C. B,* 1, *ch.* 60, § 18.   It hardly requires the citation of authorities to show that a *scire facias* is an action, and subject to the same rules with other actions, concerning defenses. — *Com. Dig. Plead.* 3 *L.* 3, 10; *State v. Harlow,* 26 *Me.* 74.

The condition of a recognizance is not broken by the entry of a default, but by the facts which, if not excused, will justify such entry. — *Dillingham v. U. S.* 2 *Wash.* 422; *State v. Robb,* 16 *Ind.* 413.   And, inasmuch as the liability arises only upon an unexcused breach of a condition, it would be contrary to every principle of law to estop a party, by an *ex parte* finding, from showing that he is excused. It is impossible that a person can have a legal defense which he has no legal means of asserting.   The law has always recognized many things as legally discharging a person from performing conditions. · Thus the obstruction of the obligee is held sufficient, and the instance given is a recognizance to the King for appearance, where the party is subsequently, and before the time for appearance, imprisoned by the King's authority.— *Com. Dig. "Condition,"* L. 6.   So by the act of God, or the act of the law.— *Com. Dig. "Condition,"* L. 12, 13.   And the American cases recognize the same doctrine. —*People v. Manning,* 8 *Cow.* 297; *People v. Bartlett,* 3 *Hill,* 570; *People v. Clary,* 17 *Wend.* 374.

The genuineness of the recognizance, or the identity of the obligor, must also be open to inquiry.— *Viner's Abr. "Recognizance,"* E.; *Brown's Abr. "Recognizance,"* 6; *Elliott v. Green,* 10 *Mich.* 113.   And this can best be done by traverse. —*Ex parte Stowell,* cited 5 *Harr. Dig.* 1514.   It would be a very anomalous practice—to say the least—to try forgery or identity, so as to absolutely fix or discharge a legal liability, on affidavits, unless a party saw fit to accept such a test.   And to fix a liability, without any notice at all, has already been decided by this Court to be beyond the power of any tribunal.—*Montgomery v. Henry,* 10 *Mich.* 19.   Except

in the cases of *Gildersleeve v. People*, 10 *Barb.* 35, and *People v. Lott*, 21 *Id.* 130, no authorities have been discovered giving any credit to the notion that the liability of an obligor can be fixed on a recognizance without a hearing. The case of *Chappee v. Thomas*, 5 *Mich.* 53, is in no sense opposed to this view. In that case the recognizance was a preliminary to the jurisdiction of the court to try the appeal, and the liability was not conditional upon any matter *in pais*, but absolute to respond to the judgment of the Circuit Court. Such an undertaking could not be excused by any misadventure which would not destroy the judgment itself, and the act of the court was the very thing contemplated. Being absolute, it was, as there explained, equivalent to a warrant of attorney to the Circuit Court to confess judgment.

The cases, with the exception of those in *Barbour's Reports*, above referred to, agree that nothing short of an action of some kind can fix the liability of the obligor.—*Johnstons v. State*, 3 *Ark.* 524; *Pinckard v. People*, 2 *Ill.* 187; *Sans v. People*, 8 *Ill.* 327; *Graham v. State*, 7 *Blackf.* 313; *State v. Harlow*, 26 *Me.* 74; *Schneider v. Commonwealth*, 3 *Metc. Ky.* 409; *State v. Glass*, 9 *Iowa*, 325. It was held in *State v. Hopkins*, 30 *Mo.* 404, affirming a former decision, that the validity of a liability under recognizance could not be properly tried at all until *scire facias* had been brought upon it, and an attempt thus made to enforce it. And the same doctrine is laid down in *Regina v. Sydserff*, 2 *Dowl. & L.* 564; (5 *Harr. Dig.* 1514).

If the party has no right to be heard before judgment, then it cannot be said that he has any way whatever of enforcing his legal defense. As between private parties, possibly, an *audita querela* would lie, but that, (being in itself a recognized form of action, upon which process issues as in other cases to bring in the defendant,) cannot lie against the government — *Viner's Abr.* "*Audita Querela*," 1; *Fitzh. N. B.* 102, *et seq.*; *Brooks v. Hunt*, 17 *Johns.* 484. And this may be the reason why in all cases of debts of the crown the traverses

and other forms of defense were allowed· upon extents, on recognizances and other obligations, where among private parties the remedy by *audita querela* was most frequent. For the old authorities furnish more instances of a resort to it upon statutes and recognizances, than in any other cases. And although the practice on *audita querela* has become superseded by motion, and practically obsolete for most purposes, yet where the parties dispute the facts on which relief is sought there can be no question of the right to have a trial by jury, and the benefit of proceedings in error, where the matter is one of legal cognizance, and not discretionary.— *Nathan v. Giles*, 5 *Taunt.* 558; *Lister v. Mundell*, 1 *B. & P.* 427; *Symons v. Blake*, 2 *C. M. & R.* 416; *Baker v. Ridgway*, 2 *Bing.* 41; *Hanson v. Blakey*, 4 *Bing.* 493; *Hewes v. Mott*, 6 *Taunt.* 329; *Graham's Pr.* 450.

It has been held quite uniformly that legal proceedings which do not provide for due notice to the party charged, and which do not give him a chance to have his rights tested in a legal way, are not due process of law, and are in violation of constitutional right. Such has frequently been held by this Court.—*Hibbard v. People*, 4 *Mich.* 126; *Parsons v. Russell*, 11 *Id.* 113; *Ames v. Port Huron Log Driving & Booming Co.* 11 *Id.* 139; *Price v. Hopkin*, 13 *Id.* 318; *Groesbeck v. Seeley*, 13 *Id.* 329.

For these reasons the judgment in question was unauthorized and could not be made valid by legislation. A neglect on the part of prosecuting attorneys to do their duty, under laws affording ample remedies to the State, cannot authorize the introduction of new remedies whereby private rights are unlawfully endangered.

CHRISTIANCY J.

So far as relates to the trial of the question of default for non-appearance, I see no objection to the statute; that is a question depending upon the record, and to be tried by the Court, and not by a jury.

And if the cognizors never appeared and were never notified to appear in court prior to the judgment, I am inclined to think the trial of the question of identity could hardly be urged against the validity of the statute; since that question must in such case, I think, be looked upon as undetermined by the judgment, and still open to the defendants whenever an attempt should be made to enforce the judgment against them by execution.

The record in this cause does not show whether any of the cognizors appeared or attempted to show cause or not; nor does it show any notice to them of the proceedings to take judgment. Independent of this statute, the recognizance in a criminal case has always been understood to impose upon the cognizors the duty not only of securing the appearance of the principal to answer, but that he should abide the order, and not depart without the leave of the court. By this statute, if they have failed to secure the appearance of the principal, they are required, at their own peril, to take notice of the entry of the default for non-appearance, (to which there can be no constitutional objection), and if they have any matter of defense or excuse to allege against a judgment, for the amount of the recognizance, they are required of their own motion, within two days after the entry, to present the same to the court; and failing to do this, or, (as I understand the statute,) failing to show *sufficient* cause, the court is authorized to enter a judgment against them, in debt, for the amount.

Now if, upon appearing within the time to show cause, the statute had made provision for a regular trial of the questions which might be involved, securing substantially the same rights as they would have been entitled to in an action brought upon the recognizance, no objection could have been made to the validity of the statute.

And if this statute could be construed as authorizing the judgment to be entered *only* in cases where *no motion* or *attempt* is made to show *any* cause within the prescribed time, I should agree with my brother Cooley, that the recog-

nizance, having been entered into under this statute, should be understood as incorporating its terms, and therefore as an express authority, after the time agreed upon had expired, to enter the judgment in this manner in all such cases, within the principle recognized in *Chappee v. Thomas*, 5 *Mich.* 33. But. the statute will not admit of this construction. The language is "unless *good* cause to the contrary be shown"; clearly showing the intent to make the statute apply equally to cases where *no attempt* is made to show cause, and to those in which the attempt is made, but the cause shown shall be deemed by the court insufficient. And the entry in the present case is in accordance with this view of the statute, and would be equally true, whether no attempt had been made to show cause, or the attempt had been made and the cause shown had been adjudged insufficient; — "No *good* cause to the contrary appearing to the Court," &c.

The statute, therefore, authorizes the court to try not only the truth of the facts offered in excuse or defense, but their sufficiency as a legal defense to the forfeiture. And as no mode is provided, nor any allusion made to any issue or form of trial, and it clearly appears by comparing this statute with that formerly in force, that no regular trial, as of an action, is contemplated, the inference is irresistible that the intention of this statute was to authorize the courts to try these questions, both of fact and law, in a summary manner, upon motion or petition, and upon affidavits. Now, while there may be many matters of excuse in such cases which would appeal only to the *discretion* of the judge—as to which this mode of proceeding would be unobjectionable,—yet, as has been sufficiently shown by my brother Campbell, many other facts may exist, and may be shown, which in themselves constitute a full and complete legal defense against a forfeiture for non-appearance.

Many of these defenses consist of matters *in pais*, in no way determinable by inspection of the record. Of all *such* matters of legal defense, I think the cognizors must be held to have a constitutional right to a trial, substantially as in

ordinary actions at law, and the right to demand a jury; *unless* by entering into the recognizance under this statute they can properly be held to have waived these rights, and consented to the mode of trial provided by the statute. Upon this question I have felt much doubt, but have finally arrived at the conclusion, that as to all defenses which admit the voluntary execution or acknowledgment of the recognizance, it is competent for the parties thus to waive their rights, and to consent to the mode of trial provided by the statute; and that by voluntarily executing the recognizance under this statute, they must be held to have done so, and that the statute as to these defenses is therefore valid.

But as to those defenses which involve a denial of the voluntary execution or acknowledgment of the recognizance by the defendants—such as forgery, non-identity, or its procurement by duress—there is no possible ground for the application of the doctrine of waiver; and as to these the cognizors are entitled to the ordinary and constitutional modes of trial. And, notwithstanding some respectable authorities to the contrary, I have been unable to discover any satisfactory principle upon which the trial of the latter class of defenses, in the summary mode authorized by the statute, can be held to satisfy the constitutional requisition of "due process of law," or that which secures the right of a trial by jury.

When the recognizance is taken in open court and entered upon record, no signature being necessary, the defense of forgery could not be set up. But from the record in the present case it would appear that the recognizance in question must have been taken before a magistrate and returned into court, in which case it is required to be signed; and the defense of forgery is, therefore, I think, open to the defendants, as well as that of identity or duress. It may with truth be said that questions of this nature might arise in cases like that of *Chappee v. Thomas*, and cases of a like character; but in such cases the judgment is not absolutely final and conclusive, upon questions of this kind. The defendants in such cases,

between individuals, would be entitled to the benefit of such defenses by resorting to the common law remedy by *audita querela*. But, as shown by my brother Campbell, this is a remedy which cannot be resorted to against the State.

As we are not authorized to say such defenses did not exist in the present case, when the defendants below had no right or opportunity secured for presenting them, and when the record would have been the same had they been presented and overruled, I must concur with my brother Campbell, that, so far as the statute in question applies to the present case, it is in violation of the Constitution, and that the judgment is therefore erroneous and should be reversed.

The court being thus equally divided, the judgment below was affirmed.